UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RENERGY, INC.,**<br>461 State Route 61<br>Marengo, OH 43334<br><br>      **Plaintiff,**<br><br>v.<br><br>**MT. HAWLEY INSURANCE COMPANY,**<br>9025 N. Lindbergh Drive<br>Peoria, IL 61615<br><br>**Defendant.** | ) Case No.<br>)<br>) **Judge**<br>)<br>)<br>)<br>)<br>)<br>)<br>) **JURY DEMANDED**<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Now comes Plaintiff Renergy, Inc. ("Renergy"), by and through its undersigned counsel, brings this action against Defendant Mt. Hawley Insurance Company ("Mt. Hawley") and states as follows:

## NATURE OF THE ACTION

1. This is a civil action arising from an insurance dispute between Renergy and Mt. Hawley, specifically, Mt. Hawley's obligation to reimburse Renergy for costs associated with responding to a pollution incident. As set forth below, Renergy asserts that the policy issued by Mt. Hawley to Renergy unambiguously provides coverage for costs associated with the pollution incident at issue. Mt. Hawley breached the insurance contract by denying its obligations to Renergy under the policy. In its adjustment of Renergy's claim for coverage, Mt. Hawley has failed to exercise good faith and fair dealing with regard to its insured, Renergy.

## THE PARTIES

2. Plaintiff Renergy is a corporation organized under the laws of Ohio with its principal place of business in Marengo, Ohio. Renergy is engaged in the business of renewable energy creation and waste treatment.

3. Defendant Mt. Hawley is a corporation organized under the laws of Delaware with its principal place of business in Peoria, IL. Mt. Hawley is engaged in the business of underwriting and selling insurance policies.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, because Renergy and Mt. Hawley are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

5. This Court has personal jurisdiction over Mt. Hawley because it conducts substantial business within the jurisdiction of this Court, is licensed to sell insurance policies in Ohio, and contracted to insure a business or risk in Ohio.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Renergy's claims occurred in Marengo, Ohio which is within this judicial district.

7. The Court has the power to grant the declaratory relief sought in this action pursuant to 28 U.S.C. § 2201.

## FACTUAL BACKGROUND

### The Policy

8. On or about August 26, 2022, Mt. Hawley issued a Site Specific Environmental Liability Insurance Policy to Renergy, for which Renergy paid a substantial premium, bearing

policy number SSE0002430 for the policy period August 26, 2022 to August 26, 2023 (the "Policy"). A true and accurate copy of the Policy is attached hereto as **Exhibit A**.

9. The Policy provides a $1,000,000.00 per occurrence limit and a $5,000,000.00 aggregate limit. **Exhibit A** at p. 4.

10. The Policy's insuring agreement states in part:

> **COVERAGE B – CORRECTIVE ACTION COSTS**
> We will pay those sums that the insured becomes legally obligated to pay for **Corrective Action Costs** caused by a **Pollution Incident** within the **Coverage Territory** at, on or arising from an **Insured Site** to which this insurance applies. We will have the right and duty to defend the insured for any **Claim** seeking **Corrective Action Costs**. However we will have no duty to defend against any **Claim** seeking **Damages** for **Corrective Action Costs** to which this insurance does not apply. We may, at our discretion, investigate any **Pollution Incident** and settle any **Claim** that may result.

**Exhibit A** at p. 6.

11. The Policy includes the following definitions:

> **SECTION VI – DEFINITIONS**
> . . .
> **4. Corrective Action Costs** means reasonable and necessary costs incurred for response, abatement, investigation and removal actions resulting from a **Pollution Incident** as legally required by an **Implementing Agency** acting pursuant to **Environmental Laws** including the preparation, development, modification and implementation of a corrective action plan and the monitoring, evaluation and reporting of the results of the implementation of such plan.
>
> **Corrective Action Costs** include **Restoration Costs**.
> . . .
> **17. Pollution Incident** means an accidental **Release of Pollutants**. The entirety of continuous or repeated **Releases** at, on, under or migrating from the same **Insured Site** shall be deemed to be one **Pollution Incident**.
>
> . . .
>
> **20. Restoration Costs** means reasonable and necessary costs incurred by the insured with the Company's written consent, to repair, restore or replace damaged real or personal property in order to restore the property to the condition it was prior to being damaged in the course of incurring **Corrective Action Costs**. **Restoration Costs** shall not exceed the actual cash value of such real or personal property prior

3

to incurring the **Corrective Action Costs** or include any costs for betterments or improvements. For the purposes of this definition, actual cash value means replacement cost of the damaged real or personal property reduced by accumulated depreciation and obsolescence.

**Exhibit A** at p. 18, 20.

12. Renergy has complied with all conditions precedent in the Policy.

13. None of the Policy's exclusions are applicable.

## The Incident

14. On December 24, 2022, Renergy's anaerobic digester, which uses microorganisms to break down organic materials to produce methane-based biogas, malfunctioned. As a result of the malfunction, the anaerobic digester released 150,000 gallons of partially treated digestate into the surrounding environment (the "Incident").

15. Based on expert review, it is believed that the Incident occurred when supports for the internal gas pipe failed. The Incident was not the result of operator error or a failure to properly maintain the digester.

16. Renergy reacted immediately to the Incident, taking appropriate actions, including reporting to Ohio EPA, notifying Mt. Hawley, hiring an emergency contractor to address the Incident, and mobilizing numerous employees to assist.

17. Ohio EPA issued a Notice of Violation for the unauthorized release of digestate into nearby waters (the "Notice"). The Notice provided a list of initial abatement actions to be taken by Renergy: "terminate the release of digestate to the environment; contain the released digestate; recover/mitigate the released digestate on the impacted areas; remediate the initial scene of the release to prevent additional discharges to the Waters of The State; dispose all materials removed according to all local, state and federal regulations."

18. Ohio EPA prohibited future operation of the digester until it was repaired in accordance with a plan to be approved by Ohio EPA. Additionally, Ohio EPA required Renergy to implement biogas and odor monitoring.

19. While the digester was inoperable, Renergy was unable to treat waste stored in on-site frac tanks. Accordingly, Renergy arranged to have the waste materials moved to another facility.

20. On March 11, 2023, the digester resumed all operations.

21. As a result of the aforementioned corrective actions to mitigate damage caused by the Incident, Renergy has incurred costs in excess of $1,900,000.00.

The Claim

22. On December 27, 2022, Renergy reported the Incident to Mt. Hawley. The claim was made as timely as practicable and in accordance with the Policy's terms and conditions.

23. Mt. Hawley acknowledged receipt of Renergy's notice of the Incident, assigning claim number 00519564 (the "Claim"). Mr. Hawley made numerous requests for information with which Renergy complied.

24. Renergy subsequently notified Mt. Hawley of the Notice, including Renergy's legal obligations to address the Incident, per Ohio EPA.

25. Renergy submitted initial invoices associated with the aforementioned actions taken by Renergy, which fell within the Policy's definition of Corrective Action Costs associated the Incident.

26. On February 16, 2023, Mt. Hawley raised several defenses to coverage for many of the invoices submitted by Renergy. Mt. Hawley cited the "Knowingly Wrongful Acts" Exclusion and alleged failure to comply with the "Voluntary Payment" Provision.

5

27. Renergy submitted invoices in addition to those initially provided, bringing the total amount of covered Corrective Action Costs to $1,562,443.88.

28. On May 30, 2023, Mt. Hawley partially disclaimed coverage, agreeing to pay $257,742,[1] a small fraction of the $1,562,443.88 paid by Renergy. Mt. Hawley's denial cited the aforementioned defenses. Mt. Hawley also claimed that the submitted invoices did not fall within the definition of Corrective Action Costs based upon the information provided.

29. On August 25, 2023, counsel for Renergy submitted additional information to Mt. Hawley, urging it to reconsider its coverage position.

30. Over the course of several months, Renergy continued to provide all documentation requested by Mt. Hawley, including duplicate requests for the same information.

31. On October 29, 2023, through counsel, Mt. Hawley reiterated its coverage denial.

32. On December 22, 2023, Mt. Hawley again requested supporting documentation with which Renergy complied.

33. Despite Renergy's continued supply of information and documentation over the course of fourteen months, Mt. Hawley denies its obligations under the Policy.

34. Renergy has continued to incur costs associated with the Incident, which now exceed $1,900,000.00.

35. As a result of Mt. Hawley's denial of its obligations under the Policy, Renergy has been damaged.

---

[1] Mt. Hawley later reduced this amount to $246,718.25 in an email, dated June 13, 2023.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

36. Renergy incorporates by reference, as if fully restated herein, the allegations set forth in paragraphs 1 through 35 of the Complaint.

37. This is a claim for a declaratory judgment pursuant to 28 U.S.C. § 2201. Renergy seeks a judicial determination of the rights and duties of Renergy and Mt. Hawley with respect to an actual controversy arising out of the Policy.

38. Pursuant to the Policy's terms, the Mt. Hawley is obligated to pay for Corrective Action Costs that Renergy is legally obligated to pay as a result of the Incident.

39. As a result of Mt. Hawley's coverage denial for Corrective Action Costs associated with the Incident, there is an actual, justiciable controversy existing between Renergy and Mt. Hawley.

40. The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between Renergy and Mt. Hawley with respect to the availability of coverage under the Policy. The dispute between the parties over the availability of coverage under the Policy is of sufficient immediacy to justify the issuance of declaratory relief by this Court.

41. Pursuant to 28 U.S.C. § 2201, and based on the language of the Policy, Renergy is entitled to a declaration from this Court that Mt. Hawley has an obligation to reimburse Renergy, up to policy limits, for any Corrective Action Costs from the Incident.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

42. Renergy incorporates by reference, as if fully restated herein, the allegations set forth in paragraphs 1 through 35 of the Complaint.

43. The Policy is a valid and enforceable contract between Renergy and Mt. Hawley.

44. All premiums due under the Policy has been paid, and Renergy has performed all other obligations of the insured under the same.

45. Mt. Hawley has wrongly asserted that Renergy failed to comply with the Policy's conditions, exclusions to coverage under the Policy apply, and it does not have to honor its obligations under the Policy.

46. The Policy, applicable law, and pertinent facts demonstrate that Renergy complied with all conditions precedent in the Policy, no exclusion to coverage applies, and Mt. Hawley is obligated to pay for Corrective Action Costs up to the limits described in the Policy.

47. By denying coverage under the Policy, Mt. Hawley has failed to honor its obligations and has breached the Policy.

48. As a direct and proximate result Mt. Hawley's breach of the Policy, Renergy has suffered or will suffer damages in an amount in excess of $75,000, to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (Bad Faith)

49. Renergy incorporates by reference, as if fully restated herein, the allegations set forth in paragraphs 1 through 35 of the Complaint.

50. Mt. Hawley has a duty to act in good faith in its handling of the Claim. Specifically, Mt. Hawley has a duty to act in good faith in its investigation and determination as to whether costs associated with containing the Incident constitute Corrective Action Costs, whether an exclusion to coverage applies, and timely payment of the Claim.

51. Mt. Hawley has failed to exercise good faith in the handling of the Claim because its denial of payment for Corrective Action Costs borne by Renergy is not predicated on circumstances that furnish reasonable justification therefore. Further, Mt. Hawley has engaged in a pattern and practice of making repetitive and burdensome demands for information from Renergy

without conducting its own investigation or reviewing and considering the materials provided by Renergy.

52. Mt. Hawley acted arbitrarily, capriciously, and in bad faith by refusing to consider statutory provisions and case law that contradict the application of certain conditions and exclusions and denying coverage on this basis. Mt. Hawley ignored that the costs incurred in containing the Incident clearly constitute Corrective Action Costs.

53. Mt. Hawley's wrongful and bad faith claims handling, denial of its obligations under the Policy, and failure to pay for Corrective Action Costs has caused, or will cause, Renergy to suffer damages in an amount to be proven at trial in excess of $75,000.00.

WHEREFORE, Renergy prays for a judgment on its Complaint as follows:

A. On its First Claim for Relief, a declaration that the costs associated with containing the Incident are Corrective Action Costs within the meaning of the Policy and that Mt. Hawley obligated to pay Renergy for these costs up to its Policy's limits.

B. On its Second Claim for Relief, an award of all direct and indirect compensatory damages, and Renergy's attorneys' fees incurred in this action, resulting from Mt. Hawley's breach of the Policy in an amount to be established at trial, but no less than $75,000.00;

C. On its Third Claim for Relief, an award of all direct and indirect compensatory damages, punitive damages, and attorneys' fees incurred in this action as a result of Mt. Hawley's bad faith claims handling, coverage denial under the Policy, and failure to pay, but no less than $75,000.00; and

D. An award of costs and pre- and post-judgment interest at the maximum statutory or other rate; and

E. Such other and further relief as this Court deems proper and just.

## **JURY DEMAND**

Plaintiff hereby demands, pursuant to Fed. R. Civ. P. 38(b), trial by a jury constituted of the maximum number of jurors permissible by law on all issues triable at law.

Date: November 1, 2024    Respectfully submitted,

*/s/ P. Wesley Lambert*
P. Wesley Lambert (0076961)
Shumaker, Loop & Kendrick, LLP
121 South Main Street, Suite 575
Akron, Ohio 44308
Email:  wlambert@shumaker.com
Telephone: (330) 572-7320
Facsimile:  (330) 572-7321

And

Meagan R. Cyrus (Florida Bar No. 124337)
*Pro Hac Pending*
Krystina E. Garabis (100120)
Shumaker, Loop & Kendrick, LLP
Huntington Center
41 South High Street, Suite 2400
Columbus, Ohio 43215
Email:  mcyrus@shumaker.com
           kgarabis@shumaker.com
Telephone: (614) 463-9441
Facsimile:  (614) 463-1108

*Counsel for Renergy, Inc.*